UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| W.A. GRIFFIN, M.D., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>SEVEN CORNERS, INC., )<br>)<br>Defendant. ) | CAUSE NO. 4:18-CV-7-PPS |

# **OPINION AND ORDER**

Both parties already moved for summary judgment in this case, and I denied both motions. [DE 70.] In the process, I invited more robust briefing on whether the insurance policy at issue here is covered by ERISA. Seven Corners responded with another motion for summary judgment. [DE 71.] This time, it has presented me with facts showing that Dr. Griffin cannot pursue this claim on behalf of her patient because she did not get the consent of the plan administrator, Seven Corners. The law is clear that this misstep dooms this litigation, and so, I will grant summary judgment.

## Background

The odd impetus for this case is an international au pair who purchased medical insurance for her adventure in the United States (patient N.V.). Dr. Griffin alleges that she performed medical services for N.V. and never got paid. According to Dr. Griffin, the au pair subsequently assigned Dr. Griffin certain rights and benefits. Pursuant to that assignment, and in the process of attempting to collect payment for the treatment she rendered to N.V., Dr. Griffin claims she asked Seven Corners to produce documents

relating to the Policy, and their failure to produce all of the requested documents results in her sole claim that Dr. Griffin is entitled to recover statutory penalties under Section 502(c)(1) of the Employment Retirement Income Security Act ("ERISA").

The history of this case, along with a related one, is a bit tortured. It began when Dr. Griffin filed a state case in Carroll Circuit Court, which was removed to federal court, alleging that Seven Corners failed to pay ERISA benefits owed to Dr. Griffin for her treatment of the au pair under 29 U.S.C. § 1132(a)(1)(B), and sought relief in the amount of $52,378. This case, assigned cause number 4:18-cv-7, is referred to as "*Griffin I*." Dr. Griffin filed another action in Carroll Circuit Court on May 29, 2018, against Seven Corners, which was also removed to federal court and assigned cause number 4:18-cv-39 ("*Griffin II*"). In *Griffin II*, Dr. Griffin seeks statutory penalties in the amount of $42,672 under 29 U.S.C. § 1132(c)(1) for violations of 29 U.S.C. §§ 1024(b), 1104, and 1133(2) for Seven Corner's alleged failure to produce documents in connection with *Griffin I*. [*See Griffin II* Compl., DE 23-1.]

On September 19, 2018, Magistrate Judge John E. Martin granted a motion to consolidate the cases, directed the Clerk to consolidate cause number 4:18-cv-7 with cause number 4:18-cv-39, and asked the parties to make all future filings in cause number 4:18-cv-7 only. [*See Griffin I*, DE 29.] Eventually, Seven Corners paid Dr. Griffin the fees she was due for her treatment of N.V., and the parties therefore filed a stipulation of dismissal with prejudice for the claims asserted in *Griffin I*, which was granted by the court. [DE 58.] Thus, the only remaining claim in this litigation is the

2

one claim for statutory penalties for the alleged failure to produce plan documents asserted in cause number 4:18-cv-39 (*Griffin II*).

As I mentioned at the outset, this case involves an au pair who visited the United States. She was in the J-1 Visa category of the Au Pair Program, which required the participants to purchase and maintain a medical insurance policy for the duration of their stay in the United States. [DE 72 at 5.] A company by the name of Intrax, Inc. helps match prospective international au pairs with United States families in search of childcare through a program it calls "AuPairCare." *Id.* Intrax does not employ the au pairs, each individual family does, and au pairs in the program are paid by the host families. *Id.* Further, the host families pay for the required medical insurance covering the au pairs. *Id.*

In this case, the au pair was insured under an insurance policy issued by Lloyd's of London. [*Id.* at 6.] The Policy was issued to Intrax as the named insured. *Id.* Seven Corners was the administrator of the Policy. *Id.* Envisage Global Insurance, an Envisage International Company, developed the Policy primarily with Intrax. *Id.* The Policy is considered a "short-term limited duration" policy and runs for less than a year. *Id.* The Policy was not designed to, and does not, provide coverage to Intrax's employees. *Id.*

The Policy provides that it "is not assignable, whether by operation of law or otherwise, but benefits may be assigned." [DE 73-1 at 29.] However, the Policy also provides that it "shall not be assigned either in whole or in part without the written

3

consent of the Correspondent endorsed hereon," and Seven Corners is the Correspondent. [*Id.* at 3.]

Dr. Griffin alleges that "as a condition of services," she requires her patients to assign their "health insurance benefits and rights to sue for breaches of fiduciary duties and statutory penalties" to her. [DE 23-1 at 3.] In connection with the medical services she rendered to N.V., the au pair signed a "legal assignment of benefits and designation of authorized representative for the release of medical and health plan documents for the claims processing & reimbursement as required by federal and state laws." [*Id.* at 18.] That assignment was not executed by any representative of Seven Corners, and Seven Corners did not consent to the Assignment in writing or otherwise. [DE 72 at 7.]

Seven Corners advances two arguments in support of summary judgment. First, it contends Dr. Griffin lacks standing to pursue this claim for statutory damages because Seven Corners did not consent to the assignment, thus there was no valid assignment of rights between Dr. Griffin and N.V. Second, it argues that Dr. Griffin has failed to prove the policy is covered by ERISA. I need only address the first argument because it is dispositive.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under § 502(a) of ERISA, "a participant or beneficiary" may bring a civil action to, among other things, "recover benefits due to [her] under the terms of the plan." 29 U.S.C. § 1132(a)(1). This includes being able to sue for a civil penalty where the administrator refuses to supply requested information. 29 U.S.C. § 1132(c). Even assuming that the Policy is an ERISA Plan (which is an outstanding issue from the first round of motions for summary judgment but need not be decided here since standing is so clearly lacking), only a "participant" or "beneficiary" may assert a civil action for the relief provided under Section 502(c)(1), as requested by Dr. Griffin. 29 U.S.C. § 1132(a)(1)(A), 1132(c)(1). Dr. Griffin does not allege that she was either a participant or a beneficiary. Rather, she contends her suit is valid because she received an assignment of rights from her patient. However, she does not dispute that she did not obtain Seven Corners' consent to obtain the assignment.

This is not Dr. Griffin's first rodeo. Indeed, she is a rather prolific ERISA litigant. Dr. Griffin has brought this same claim in multiple other lawsuits, and courts have addressed this exact same issue, holding Dr. Griffin lacked standing to sue for civil remedies under ERISA where she did not obtain a valid assignment. *See, e.g., Griffin v. Blue Cross & Blue Shield of Alabama*, 157 F.Supp.3d 1328, 1334-36 (N.D. Ga. 2015) (dismissing Dr. Griffin's ERISA-based claims for lack of standing because the assignment lacked authorization and was thus impermissible); *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017) (affirming district court's dismissal of

5

Dr. Griffin's claims for lack of standing where plan unambiguously stated benefits are not assignable by any member without obtaining written permission); *Griffin v. Comm. of the UAW Retiree Med. Benefits Trust*, No. 16-12002, 2016 WL 6777854, at *2-*3 (E.D. Mich. Nov. 16, 2016) (granting judgment in favor of defendant on Dr. Griffin's Section 502 ERISA claims for lack of standing where Dr. Griffin did not obtain necessary consent for assignment); *Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 872-73 (11th Cir. 2016) (affirming dismissal of Dr. Griffin's ERISA action where Dr. Griffin's purported assignments were void because Dr. Griffin had not obtained the necessary consent). All of these cases reason that unambiguous anti-assignment provisions are enforceable. All of them also agree that where the assignment provides that to be effective, the claims administrator must give consent and acknowledge the assignment in writing, but the plaintiff did not allege that she received the consent of the claims administrator, the plaintiff has failed to establish standing to bring the ERISA claims.

The same reasoning applies here. First, ERISA instructs courts to strictly enforce the terms of the plan. 29 U.S.C. § 1104(a)(1)(D). Second, unambiguous anti-assignment clauses are valid and enforceable to preclude ERISA claims. *See Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F.Supp.2d 840, 846 (S.D. Ind. 1999). "Because ERISA instructs courts to enforce strictly the terms of plans, *see* 29 U.S.C. § 1104(a)(1)(D) and *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir. 1989), an assignee cannot *collect* unless [she] establishes that the assignment comports with the plan." *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (emphasis in

6

original).

In her reply, Dr. Griffin cites *Kennedy*, arguing that a participant can *always* assign rights, no matter what the actual plan provides. [DE 74 at 13; *Kennedy*, 924 F.2d at 700.] But *Kennedy* does not stand for this proposition, and it does not address the situation like the one at hand here, where the issue is whether there was a valid assignment in conformity with the plan. Rather, *Kennedy* merely says that it is *possible* for someone who has been validly assigned rights to sue under ERISA. A similar holding was made by the Seventh Circuit in *Griffin v. TeamCare*, 909 F.3d 842, 847 (7th Cir. 2018), finding proper assignees can maintain causes of action under Section 502(c)(1). But these cases don't address improper assignees, or assignments purportedly made but that don't meet the plan's clear requirements for assignment. The problem in this case is that N.V. did not properly assign her rights to Dr. Griffin, because Seven Corners did not consent to the assignment.

The reasoning in *University Spine Center v. Anthem Blue Cross Blue Shield*, is instructive. 2018 WL 6567702 (D. N.J. Dec. 13, 2018). In that case, the Plaintiff provided services to the patient, and alleged it obtained an assignment of benefits from the patient to bring claims under ERISA, including claims that the plan administrator failed to produce plan documents. *Id.* at *1, *6. The plan provided it was not assignable without the written consent of the plan, which was not obtained. The court ruled:

> the anti-assignment provision does not allow assignment of benefits, or for that matter, the right to payment. Accordingly, the Patient's assignment of rights or benefits to Plaintiff is void. In the absence of a valid assignment from the Patient, Patient lacks

7

> standing under ERISA to pursue *any* of the claims in this action. This includes the claim against the Plan Administrator for failure to provide plan documents. *See* 29 U.S.C. 1132(c)(1) (requiring the administrator to provide plan documents only to a ''participant or beneficiary.'').

*Id.* at *6 (emphasis in original, citations omitted). This mirrors the reasoning in a case involving Dr. Griffin, where the court stated that "as the Court finds the assignment invalid, Plaintiff's other ERISA-based claims must also [be] dismissed for lack of standing. Without the assignment, Plaintiff is neither a participant, a beneficiary, nor a fiduciary under the Plan. Accordingly, Plaintiff does not have standing to bring her claims."). *Griffin*, 157 F.Supp.3d at 1336.

Here, the Policy plainly and unambiguously states that the Policy "shall not be assigned in whole or in part without the written consent of the Correspondent endorsed hereon." [DE 73-1 at 3.] Seven Corners is the correspondent, and it is undisputed that it did not consent to the assignment attached to Dr. Griffin's complaint. [Brumet Aff., DE 73-2, ¶ 5.] Without that written consent, the assignment was not valid, and Dr. Griffin does not have the right to assert her civil penalty claims against Seven Corners.

Dr. Griffin has not produced any case law to the contrary. Although she protests that there is a difference between assigning "benefits" and assigning "rights," and concludes that "Congress does not require a permission slip to enforce ERISA rights," she has not provided any case law or other authority in support of her argument. [DE 74 at 12-13.] And, on the other side, there is a landslide of case law showing that an assignment needs to comply with the requirements of the plan in order to be a valid

8

assignment of rights.  As such, summary judgment is warranted in Seven Corners' favor because Dr. Griffin lacks standing to bring her claims for civil damages under ERISA.

## Conclusion

For all of these reasons, Seven Corners' motion for summary judgment [DE 71] is GRANTED and this case is DISMISSED because Dr. Griffin lacks standing.  The Clerk is ORDERED to enter judgment accordingly.  Finally, the Clerk is ORDERED to CLOSE this case, as well as to CLOSE Case No. 4:18-cv-39.

**SO ORDERED**.

ENTERED: July 19, 2021.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**